IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RENAE JOHNSON,                              3:15-CV-01982-BR

            Plaintiff,                      OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

            Defendant.


**BRUCE W. BREWER**
P.O. Box 421
West Linn, OR 97068
(503) 621-6633

        Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**JANICE E. HEBERT**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**FRANCO L. BECIA**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104
(206) 615-2114

        Attorneys for Defendant


**BROWN, Judge.**

        Plaintiff Renae Johnson seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which she denied Plaintiff's application

for Supplemental Security Income (SSI) under Title XVI of the

Social Security Act.  This Court has jurisdiction to review the

Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

        For the reasons that follow, the Court **AFFIRMS** the decision

of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

        Plaintiff filed an application for Disability Insurance

Benefits (DIB) on November 18, 2001, and alleged a disability

onset date of October 1, 1997.  Tr. 45.[1]  The application was

denied initially and on reconsideration.  An Administrative Law

Judge (ALJ) held a hearing on December 3, 2003.  Tr. 45.  At the

---

        [1] Citations to the official transcript of record filed by
the Commissioner on June 10, 2016, are referred to as "Tr."

2 - OPINION AND ORDER

hearing Plaintiff was represented by an attorney.  Plaintiff, a vocational expert (VE), and lay witnesses testified at the hearing.

The ALJ issued a decision on February 18, 2004, in which he found Plaintiff was not disabled, and, therefore, was not entitled to DIB.  Tr. 45.  Plaintiff appealed the matter to the United States District Court.  On October 6, 2005, United States District Judge Ann Aiken granted the parties' stipulated Motion to Remand.  On October 11, 2005, Judge Aiken entered a Judgment of Remand.

An ALJ held a hearing on remand on May 10, 2006.  Tr. 45. On May 23, 2006, an ALJ issued a decision on remand in which he found Plaintiff was not disabled through her December 31, 2004, date last insured.  Tr. 54.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Plaintiff did not appeal the Appeal Council's denial to the United States District Court.

On May 12, 2006, Plaintiff filed an application for SSI and alleged a disability onset date of October 1, 1997.  Tr. 103. Plaintiff subsequently amended her alleged onset date to May 12, 2006.  Tr. 19.  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on March 30, 2009.  Tr. 19.  At the hearing Plaintiff was

3 - OPINION AND ORDER

represented by an attorney.  Plaintiff and a vocational expert
(VE) testified at the hearing.

The ALJ issued a decision on June 17, 2009, in which he
found Plaintiff was not disabled and, therefore, was not entitled
to SSI.  Tr. 19-30.  Plaintiff appealed the matter to the United
States District Court.  On June 4, 2012, United States District
Judge Ann Aiken entered a Judgment of Remand.

On September 27, 2012, the Appeals Council entered an order
in which it remanded the matter to the ALJ to "[f]urther evaluate
[Plaintiff's] mental impairment," to "[g]ive further
consideration to [Plaintiff's] maximum [RFC] and provide
appropriate rationale with specific references to evidence in
support of the assessed limitations," and to "obtain evidence
from a vocational expert to clarify the effect of the assessed
limitations on [Plaintiff's] occupational base."  Tr. 1105.

An ALJ held a hearing on remand on November 4, 2013.
Tr. 1352-80.  At the hearing Plaintiff was represented by an
attorney, and Plaintiff and a lay witness testified.  On
December 9, 2013, an ALJ issued a decision on remand in which he
found Plaintiff is not disabled.  Tr. 1086-1102.  Pursuant to 20
C.F.R. § 404.984(d), that decision became the final decision of
the Commissioner when the Appeals Council denied Plaintiff's
request for review.  Tr. 1070-73.  *See Sims v. Apfel*, 530 U.S.
103, 106-07 (2000).

4 - OPINION AND ORDER

## BACKGROUND

Plaintiff was born on February 27, 1970, and was 43 years old at the time of the 2009 hearing. Tr. 103. Plaintiff graduated from high school. Tr. 1101. Plaintiff has past relevant work experience as a cashier, janitor, and airport cleaner. Tr. 1101.

Plaintiff alleges disability due to fibromyalgia, a back injury, a cognitive disorder, arthritis, weakness in her right leg, and depression. Tr. 112.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 1089-91, 1095-99.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for

proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  It is more than a mere scintilla [of evidence] but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).

6 - OPINION AND ORDER

The court may not substitute its judgment for that of the
Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. § 416.920.  Each step is potentially
dispositive.

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity.  20 C.F.R. § 416.920(b).  *See also Keyser v. Comm'r of
Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commis-
sioner determines the claimant does not have any medically severe
impairment or combination of impairments.  20 C.F.R.
§ 416.920(c).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of a
number of listed impairments that the Commissioner acknowledges
are so severe they preclude substantial gainful activity.  20
C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.

criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's Residual Functional Capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.945(a). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the

national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

### ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her May 12, 2006, application date.  Tr. 1088.

At Step Two the ALJ found Plaintiff has the severe impairments of chronic neck pain due to disc protrusion at C6-7, chronic low-back pain due to compression fractures and degenerative disc disease, fibromyalgia, a cognitive disorder, and an anxiety disorder.  Tr. 1088.  The ALJ found Plaintiff's conditions of a somatoform disorder and a conversion disorder are not medically determinable impairments.  Tr. 1090.

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ found Plaintiff has the RFC to lift and/or to carry ten pounds frequently and 20 pounds occasionally.  Tr. 1093.  The ALJ found Plaintiff could

occasionally reach overhead; climb ladders, ropes, or scaffolds; bend; twist; crouch; crawl; and interact with the public. Tr. 1093.  The ALJ found Plaintiff can perform one-to-three step routine work and "must have the option to sit or stand at will." Tr. 1093.

At Step Four the ALJ found Plaintiff is unable to perform her past relevant work.  Tr. 1101.

At Step Five the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy.  Tr. 29. Accordingly, the ALJ found Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly rejected Plaintiff's testimony in part, (2) improperly rejected the testimony and statements of lay witnesses, and (3) improperly failed to reassess Plaintiff's RFC and instead adopted the RFC finding from the 2004 decision on Plaintiff's DIB application.

I.   **The ALJ did not err when he partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred by failing to provide clear and convincing reasons for partially rejecting her testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment

10 - OPINION AND ORDER

or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id.*  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester*, 81 F.3d at 834).

At the November 2013 hearing on remand Plaintiff testified she has pain in her lower back, her right leg, her neck, and her left arm.  Plaintiff stated her pain has become worse since her March 2009 hearing.  Plaintiff stated she is "on 90 Percocets," Neurontin, and muscle relaxers in an effort to control her pain.  Tr. 1361.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some symptoms," but Plaintiff's testimony "concerning the intensity, persistence

and limiting effects of [her] symptoms are not entirely credible." Tr. 1094.  The ALJ stated the record as a whole was inconsistent "with the debilitating symptoms and limitations" alleged by Plaintiff.  For example, the ALJ noted Plaintiff underwent a cervical fusion in April 2006 to address a disc herniation at C6-7.  In July 2006 Plaintiff underwent ankle surgery on her right ankle.  In October 2006 Plaintiff reported doing very well and had only occasional complaints of ankle pain. Tr. 413.

In September 2006 Christopher Komanapalli, M.D., examined Plaintiff.  Dr. Komanapalli noted Plaintiff transferred easily from her chair to the examination table and sat comfortably. Tr. 273.  Plaintiff was able to walk to the examination room without difficulty, to perform finger-to-nose coordination exercises, and to perform heel-to-knee and heel-to-toe transfers. Tr. 270.  Plaintiff's muscle strength was five out of five in her upper and lower extremities.  Tr. 270-71.  Dr. Komanapalli noted "significant evidence of poor effort and inconsistencies" during his examination.  Tr. 273.

The ALJ noted the record did not establish there had been any significant change in Plaintiff's condition or in the objective findings since earlier administrative proceedings.  For example, a December 2006 MRI of Plaintiff's lumbar spine showed only mild degenerative changes and mild foraminal narrowing.

Tr. 1172.

In September 2007 Plaintiff's treating physician, Julie
Paquette, M.D., reported Plaintiff was frustrated with the test
results that did not indicate any connective tissue disease.
Tr. 759.  Plaintiff "demand[ed] that more tests be done," but
Dr. Paquette explained she had "exhausted the tests and referral
to specialists to evaluate [Plaintiff's] complaints."  Tr. 759.
Dr. Paquette suggested Plaintiff find another primary-care
provider to take over her medical care if she "wish[ed] to pursue
further work up."  Tr. 759.

In November 2007 Plaintiff was seen by Normy Chiou, M.D.
Plaintiff reported her neck pain improved 50% and she "functions
well," but she needed a refill of Percocet.  Dr. Chiou noted
Plaintiff had normal gait and station.  Tr. 705.  Dr. Chiou,
however, described Plaintiff as a "difficult historian easily
distracts self to mention multiple physical sensations and refers
back to history and previous tests."  Tr. 705.

In April 2008 Christopher Ginocchio, M.D., evaluated
Plaintiff.  Plaintiff reported lightheadedness, dizziness, poor
balance, back pain, right-leg pain, and headaches.  Dr. Ginocchio
noted "very slight weakness" in Plaintiff's neurologic
examination, but he did not find any evidence of nerve damage and
concluded the slight weakness "did not represent an underlying
neurologic issue."  Tr. 695.

Dr. Ginocchio noted Plaintiff had a normal lumbar MRI and a
negative straight-leg raise.  Dr. Ginocchio recommended
conservative treatment of physical therapy and use of anti-
inflammatories.

On October 23, 2008, Karen Campbell, treating Nurse
Practitioner, noted Plaintiff arrived with "federal papers for
loan forgiveness."  Tr. 679.  Plaintiff advised N.P. Campbell
that "[s]he feels like she is with the wrong provider if I will
not sign papers to forgive her loans."  Tr. 679.  N.P. Campbell,
however, reported she was '[u]nable to sign a federal form
stating disability and loan forgiveness."  Tr. 680.

In June 2009 Plaintiff underwent an MRI of her brain.  The
results were normal and unchanged from a previous MRI.  Tr. 1246.
N.P. Campbell noted in June 2009 that Plaintiff was "tearful and
very angry" about the denial of her application for SSI.
Tr. 1246.

In December 2009 x-rays of Plaintiff's lumbar spine showed
only mild thoracolumbar scoliosis, multilevel degenerative
changes, and wedging of the L1 and L2 vertebral bodies related to
"old compression fractures."  Tr. 1318.  In August 2011 x-rays of
Plaintiff's right hip were normal.  Tr. 1316.  In October 2011
x-rays of Plaintiff's right foot were also normal.  Tr. 1315.

In January 2012 Plaintiff reported to Nurse Practitioner
Karen Briggs that she had been doing yoga and pilates and felt

14 - OPINION AND ORDER

that her body was "flared up." Tr. 1227.  N.P. Briggs, however,

found on examination that Plaintiff had only mild tenderness with

lateral bending and her range of motion was "intact."  Tr. 1227.

On October 5, 2012, N.P. Briggs noted Plaintiff was

> [d]emanding I sign her papers for disability.  She
> reports I signed these forms last year.  The forms
> have currently changed . . . and appear patient
> must fit the criteria according to the law and
> determined to be disabled. . . .  [S]he has not
> been determined disabled.  I therefore could not
> agree to sign the papers for her housing.  She
> became very angry and demanded to be transferred
> to another provider.

Tr. 1224-25.

In October 2012 Plaintiff established care with N.P. Heather

Reed.  N.P. Reed noted Plaintiff had "normal gait and station"

and recommended a muscle relaxer for a muscle spasm in her neck.

Tr. 1217.  In January 2013 Plaintiff requested N.P. Reed sign

"paperwork from the housing authority" to certify Plaintiff as

disabled.  Tr. 1212.  N.P. Reed advised Plaintiff that she would

need "to review the requirements for disability certification"

and to review Plaintiff's records.  Tr. 1213.

In February 2013 Oleg Maksimov, M.D., examined Plaintiff and

noted she "ambulat[ed] freely around the room, transfer[red] to

and from the table without difficulties," and had "no ataxia."

Tr. 1189.  Plaintiff had a normal range of motion and normal

strength in her lower extremities.  Tr. 1189.  Dr. Maksimov

prescribed Neurontin and ordered an MRI of Plaintiff's lumbar

spine.

Plaintiff's March 2013 MRI of her lumbar spine showed "moderate degenerative disc disease at L3-L4 where there is mild to moderate neural foramina narrowing." Tr. 1337.

In March 2013 Suzanne Delea, M.D., examined Plaintiff and diagnosed her with fibromyalgia. Tr. 1178. Dr. Delea recommended "physical therapy with aerobic exercise[, . . .] cognitive behavioral therapy[, . . . and] the regular practice of good sleep hygiene." Tr. 1181.

Dr. Maksimov examined Plaintiff again in May and June 2013 and noted Plaintiff "ambulate[d] freely around the room" and had normal range of motion and strength in her extremities. Tr. 1197, 1201.

On May 23, 2013, Dr. Ginocchio examined Plaintiff again and noted Plaintiff's cranial nerves were grossly intact. Tr. 1340. Dr. Ginocchio noted Plaintiff had "good strength of upper and lower extremities"; her muscles had "normal bulk and tone"; her gait had "normal base, arm swing, an stride"; and she had "good heel, toe and tandem walking." Tr. 1340. Dr. Ginocchio did not note any tremor, and Plaintiff's straight-leg raise was negative. Tr. 1341. Dr. Ginocchio stated Plaintiff's overall neurological examination was "rather unremarkable." Tr. 1341. He did not find any evidence of significant neurological compromise to suggest radiculopathy and did not "feel . . further neuro-imaging

[was] indicated." Tr. 1341. Dr. Ginocchio recommended physical therapy and pain-management of Plaintiff's fibromyalgia. Tr. 1341.

An ALJ may consider the medical evidence as a relevant factor when determining a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). An ALJ may also rely on the lack of objective medical evidence of limitations to discredit a claimant's testimony. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)

The ALJ noted Plaintiff's testimony "concerning the intensity, persistence and limiting effects of [her] symptoms" was inconsistent with her activities of daily living. For example, the ALJ noted Plaintiff was able to live alone independently, to perform selfcare and personal hygiene, and to drive a vehicle. The ALJ also noted Plaintiff talks with friends and family on the telephone daily; visits with friends once a week; grocery shops; does mechanical work on her car; watches television; prepares meals; attends yoga and pilates classes; and performs household chores such as vacuuming once a week, taking out the trash, cleaning her apartment, and doing laundry. Tr. 204, 465, 1091-92, 1096, 1099, 1227, 1346. Although Plaintiff's activities do not necessarily indicate her ability to perform work activities, they are inconsistent with her alleged level of impairment and support the ALJ's adverse inference as to

her credibility.

Accordingly, on this record the Court concludes the ALJ did not err when he partially rejected Plaintiff's testimony because he provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## II. The ALJ did not err when he did not give significant weight to the lay-witness testimony and statements of Evelyn Burbee and Phyllis Dean.

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). When "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff's mother, Evelyn Burbee, testified at the November

2013 hearing that she stays with Plaintiff every week for three
or four days.   Burbee testified she helps Plaintiff with "heavy
cleaning," moving furniture, cooking, and washing dishes.
Tr. 1370.   Burbee stated Plaintiff does things in ten-to-fifteen
minute increments and then lies down for thirty-to-sixty minutes.
Tr. 1371.   Plaintiff does chores and other activities but cannot
do "anything all at once."   Tr. 1372.   Burbee stated there are
days when Plaintiff does not do anything and is in bed for two-
to-three days.   Tr. 1373.

Phyllis Dean provided a statement on September 18, 2009, in
which she noted she sees Plaintiff at least once per week.
Tr. 928.   Dean stated Plaintiff's anxiety has become worse
because of her health problems and her financial situation.
Plaintiff complains to Dean "much more about pain in her lower
back, and how much worse it is."   Tr. 928.   Dean noted Plaintiff
goes grocery shopping, but only makes small purchases because she
cannot lift "very much."   Plaintiff gets tired even after sitting
for a few hours.   Dean noted Plaintiff "manages her personal
hygiene, does some housekeeping, and cooks for herself."
Tr. 928.

The ALJ did not give significant weight to the testimony and
statements of Burbee and Dean on the ground that the "objective
medical evidence fails to contain findings that would support the
extent of the pain complaints and related limitations" described

by Burbee and Dean.  Tr. 1101.  The ALJ noted again that the
record reflects Plaintiff's gait and extremity strength have been
consistently normal, x-rays and MRIs have reflected only mild-to-
moderate issues, and Plaintiff reported improvement with
treatment.  The ALJ also noted Burbee and Dean relied on
Plaintiff's subjective reports and presentation, which the ALJ
has found were not fully credible.

The Court concludes on this record that the ALJ did not err
when he did not give significant weight to the testimony and
statements of lay-witnesses Burbee and Dean because the ALJ
provided specific reasons germane to the witnesses for doing so.

**III. The ALJ did not err when he assessed Plaintiff's RFC.**

Plaintiff asserts the ALJ erred when he did not reassess
Plaintiff's RFC, but instead adopted the RFC finding from the
2004 decision.  The ALJ, however, conducted a thorough
examination and evaluation of the record and concluded it "fails
to show any significant change in [Plaintiff's] condition since
the [2009] decision."  Tr. 1097.

Plaintiff notes she was diagnosed with fibromyalgia in 2013,
which was not diagnosed in 2004.  According to Plaintiff,
therefore, the ALJ should have reached a different conclusion in
his assessment of her RFC.  The ALJ, however, explained:

> Although a diagnosis of fibromyalgia has been
> confirmed by a rheumatologist, [Plaintiff's] pain
> complaints and reported symptoms have remained the
> same, as have the objective findings, which have

> been largely unremarkable and primarily limited to
> subjective reports of tenderness and limitation of
> motion.  Significantly, [Plaintiff] has
> consistently had normal gait and strength,
> negative straight leg raise, and no evidence of
> focal deficit.

Tr. 1097.  In addition, Plaintiff fails to identify any specific limitations that the ALJ should have included in her RFC.

On this record the Court concludes the ALJ did not merely adopt the RFC from the 2004 decision regarding Plaintiff's limitations and he did not err in his assessment of Plaintiff's RFC.

**CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 27th day of January, 2017.

_____
ANNA J. BROWN
United States District Judge